**UNITED STATES of America, Appellee,**

v.

**Terry MITCHELL, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Alvin MITCHELL, a/k/a "Any Pen" a/k/a "Pin," Appellant.**

**Nos. 83–5138, 83–5154.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1984.

Decided April 30, 1984.

Waverly W. Jones, Jr., Christopher C. North, Norfolk, Va. (Cooper & North, Norfolk, Va., on brief), for appellants.

William G. Otis, Asst. U.S. Atty., Alexandria, Va. (Elsie L. Munsell, U.S. Atty., Michael A. Cauley, Asst. U.S. Atty., Norfolk, Va., on brief), for appellee.

Before RUSSELL and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

DONALD RUSSELL, Circuit Judge:

Alvin Mitchell and Terry Mitchell were convicted of conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1). In addition, Alvin Mitchell was convicted on three counts, and Terry Mitchell on two counts, of distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The appellants allege various errors in their trial. We find no merit in any of appellants' contentions, and accordingly affirm the judgments of conviction.

In the fall of 1982, a task force including federal, state and municipal officers was formed to combat narcotics traffic in the Tidewater area of Virginia. In the Portsmouth area it centered upon the operations of the defendant Alvin Mitchell. Based upon undisclosed information, the authorities assumed that such defendant had in that area an extensive narcotics operation with a number of distributors. His operations were largely directed from the A & B

Quick Service convenience market in the Lincoln Park area of Portsmouth. A newly-hired police officer, Victor L. Hill, was sent by the Norfolk Police Department to work in an undercover capacity in the Portsmouth area with a view of establishing contacts with 16 targeted individuals, including the defendant Alvin Mitchell and his distributors. A government informant Raymond Nottingham, who claimed to know the narcotics dealers in the area, was assigned to assist Officer Hill by identifying and introducing him to the members of the defendant Mitchell's operations. Officer Hill testified that with Nottingham's aid he met both the defendant Alvin Mitchell and his brother, the defendant Terry Mitchell, as well as the indicted but unapprehended co-conspirator Felix Sivells, whose street name was "Mr. C" or "Cadillac," and two dealers allegedly working for Alvin Mitchell, Anthony Stevenson, street named "Scum Dog," and Roland Roberts, street named "Blood Fiend."

At trial, Officer Hill also testified to conversations with the defendant Alvin Mitchell during a purchase of a substantial quantity of heroin from the latter. In this conversation, Officer Hill said that Alvin told him that the Portsmouth area was his "turf" (referring to the distribution of heroin) and warned Hill not to encroach, adding that if he did he would get "hurt." In such conversations Alvin Mitchell further inferentially identified Sivells, Stevenson and Roberts as individuals through whom he distributed heroin. Officer Hill also testified to various statements made to him by Stevenson and Roberts relating to the two Mitchells. He made purchases of narcotics from both defendants, as well as from some others who had been identified as connected with the Mitchell distribution operation. Hill was the Government's principal witness.

The Mitchell defendants, who did not testify themselves, called Nottingham as a witness in their behalf. In his testimony, Nottingham, a former addict with a record of at least four felonies, repudiated various written statements given by him to the investigating officers. He admitted, however, that after he had given these written statements and had cooperated with the investigation being conducted by Officer Hill, he had requested Government protection, claiming his life to be in jeopardy. He was given such protection. It was only after he had been brought back to Portsmouth to be used as a witness for the Government that he apparently determined not to testify as a Government witness. He eluded his protection after his return to Portsmouth, which was just a few days before trial herein began. Government authorities did not see him again until he showed up at trial as a witness for the defendants. As a witness for the defendants he, in effect, contradicted all the testimony given by Officer Hill, denied any acquaintance with either Mitchell and any introduction of Hill to "anybody," and said that all Hill's testimony of purchases of narcotics was fabricated.

The case was submitted to the jury, which returned a verdict of guilty against the defendants. From judgments entered on such verdict, the defendants have appealed. The claims of error assigned by the defendants were in some instances peculiar to one of the defendants and in other instances applied to both defendants. We shall first address the exceptions which are common to both defendants.

■ The first assignment of error common to both defendants relates to the admission of statements of alleged co-conspirators linking the defendants to the alleged conspiracy. It is the defendants' contention that the rule is that testimony or statements by alleged co-conspirators are not admissible in the Government's case in chief before a hearing and ruling by the trial judge that there is substantial evidence of the conspiracy independent of the out-of-court statement of the alleged co-conspirator. They urge that this alleged rule was violated in this case. The rule in this circuit, however, is that "a trial judge retains the option to admit conditionally the declarations of co-conspirators before the conspiracy has been independently established,

subject to the subsequent fulfillment of that factual predicate." *United States v. Hines*, 717 F.2d 1481, 1488 (4th Cir.1983).

■ There was considerable evidence, independent of any hearsay testimony, to establish the existence of a conspiracy. Much of this was supplied by admissions and declarations made by the defendant Alvin Mitchell to Officer Hill. For instance, the defendant Alvin Mitchell told Officer Hill in effect that he controlled the distribution of heroin in the Portsmouth area and he identified the individuals whose hearsay testimony was admitted as persons who distributed narcotics gotten from him. He identified in this conversation various individuals Officer Hill was to see in order to purchase various types of heroin. Thus, he told Hill that if he wished capsules he was to see "Blood Fiend" (Roberts) and that if he wanted "weight" he was to approach "Scum Dog" (Stevenson). On another occasion when Officer Hill had arranged to conclude a purchase with Alvin, he was told by Alvin that there had been "a change in plans and that [he] had to make the purchase from Cadillac" (Sivells). Officer Hill had other contacts with the defendant Alvin Mitchell evidencing Mitchell's operations and the involvement of those whose hearsay statements were admitted in the operations. As an instance of such activity, Officer Hill testified to purchases made on one or more occasions pursuant to the instruction of Alvin Mitchell. The Court in this case ruled, after hearing much of the Government's case-in-chief including that just detailed, that it was "fully satisfied that the conspiracy ... [had] been clearly established independent of any hearsay statements made by the people." This finding was, as we have seen, clearly sustained by the evidence.

■ The defendants would also find error in the fact that the case agent was excused from compliance with the district court's sequestration order and was permitted to be present and testify at the trial. What the defendants do not point out in this connection is that they did not object either to the case agent testifying or to his remaining at the counsel table with Government counsel during trial. This would be sufficient reason to dismiss this claim of error. Beyond this, we held directly in *United States v. Parodi*, 703 F.2d 768, 773 (4th Cir.1983), that the district court "has a right to make an exception from a general rule of sequestration in favor of the chief investigating agent of the government involved in a trial." We did recognize that better practice suggests that if the agent is to testify, he should testify as the Government's first witness, unless, as we said in *United States v. Frazier*, 417 F.2d 1138, 1139 (4th Cir.1969), *cert. denied*, 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1970), there were good reasons otherwise. In this case, there was justification for deferring the agent's testimony. As the Government's brief puts it, at p. 32 "the government could hardly have elicited Agent James' testimony concerning his custody of the purchased heroin without first establishing that the purchases occurred. Any other course would have unnecessarily confused the jury ...." Thus, however we consider it, this objection is untenable.

■ The defendant Terry Mitchell would argue that the evidence was insufficient to connect him with the conspiracy. In his view, the only evidence to tie him to the conspiracy consisted of Nottingham's statement implicating Alvin and Terry, and this evidence was contradicted by Nottingham's later testimony under oath. The basic error in this reasoning is its assumption that Nottingham's testimony was the only evidence tying the defendant Terry Mitchell to his brother's narcotics operation. When Officer Hill was engaged in negotiating a purchase of capsules from "Blood Fiend," the defendant Terry Mitchell took over for "Blood Fiend," the designated salesman of capsules in the operation as identified by the defendant Alvin Mitchell, and made the sale himself. On another occasion, Officer Hill had gone to the super-market to complete with the defendant Alvin Mitchell a purchase of half-an-ounce of heroin. He was instructed by a woman in the market

to go to a specified residence. He went to the designated place and met there the defendant Terry Mitchell and "Cadillac" and "Scum Dog." "Scum Dog" asked him whether he was ready to buy. Hill replied he preferred to deal with the defendant Alvin Mitchell. He waited. After a time, the defendant Alvin Mitchell arrived. He indicated he had expected Hill to have completed the purchase from the three who were at the residence when Officer Hill arrived. The defendant Alvin Mitchell then took Hill into an adjoining room and made the sale himself. This evidence was sufficient to identify the defendant Terry Mitchell with the conspiracy.

■ Another claim advanced by the defendant Terry Mitchell by way of an error peculiar to him is the denial of his motion for a severance. He asserts that he was at best a minor participant in the alleged drug operation and that it was highly prejudicial to try him along with his brother. The grant of a severance, however, is a matter within the discretion of the district court and the denial of a severance will be reversed only for clear error. *United States v. Becker,* 585 F.2d 703, 706 (4th Cir.1978). The ground asserted for severance in this case is the disparity in the evidence of the moving defendant's participation and that of others in the alleged conspiracy. Disparity in the evidence among the parties, though, is a proper ground "only in the most extreme cases," *United States v. Morrow,* 537 F.2d 120, 137 (5th Cir.1976), *cert. denied sub nom. Martin v. United States,* 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977), and this is not such an "extreme" case.

■ The defendant Alvin Mitchell has asserted a number of grounds of error unique to him. First he charges prejudicial error in the amount of bond required by the district court. It is well settled that the fixing of bail "is peculiarly a matter of discretion with the trial court," *United States v. Wright,* 483 F.2d 1068, 1069 (4th Cir.1973), and the procedure for challenging the amount of bail, as fixed by the district court, is not by exceptions after

trial but by motion before trial for reduction, with appeal to this Court if the motion is denied, *Stack v. Boyle,* 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 1 (1951). The defendant did move for a reduction but, on denial of the motion he did not appeal. The failure to appeal resulted in a waiver of his objection. Further, a review of the record on the basis of which the district court denied the motion for reduction demonstrates no abuse of discretion by that court in refusing the requested reduction.

■ Next, the defendant Alvin Mitchell charges error in the admission of the fact that he failed to file income tax returns for the years 1980 to 1982 but yet made substantial purchases in cash for automobiles. The admissibility of such evidence is supported by the well-reasoned decision in *United States v. Saint Prix,* 672 F.2d 1077, 1084 (2d Cir.1982), *cert. denied,* 456 U.S. 992, 102 S.Ct. 2274, 73 L.Ed.2d 1287, a case very similar on its facts to this one. In that case, the Court said:

> "Bennett also argues that the government should not have been allowed to show that he failed to file any tax returns for 1978 where the government's only evidence of Bennett's sudden accession of wealth was the purchase of a $4,000 motorcycle. Bennett argues that a $4,000 purchase does not show great wealth in these inflationary times. But this misses the point of the evidence. Bennett made this purchase in cash. He also laid out $59,000 cash for [a yacht]. In a narcotics prosecution, it is well established that the government may introduce evidence of cash purchases coupled with tax evidence tending to show that a defendant had no legitimate source of cash .... The tax evidence may include the failure to file tax returns."

Finally, Alvin Mitchell questions the sufficiency of the proof to convict him under count 4 of the indictment. We have reviewed the evidence on the transaction which is the basis for this count in the indictment and are convinced there was sufficient evidence for the submission of

the defendant's guilt under this count to the jury.

Accordingly, the judgments of conviction of the appellants Alvin Mitchell and Terry Mitchell are

AFFIRMED.