813 F.2d 1229
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Appellee,
v.
Robert S. WYLIE, Appellant.
UNITED STATES of America, Appellee,
v.
John A. HOWARD, Appellant.
UNITED STATES of America, Appellee,
v.
John A. HOWARD, Appellant.
UNITED STATES of America, Appellee,
v.
John F. WILSON, Appellant.
UNITED STATES of America, Appellee,
v.
John A. HOWARD, Appellant.
UNITED STATES of America, Appellee,
v.
Clayton M. MORRIS, Appellant.
UNITED STATES of America, Appellee,
v.
John A. HOWARD, Appellant.
UNITED STATES of America, Appellee,
v.
Carlous J. HOLT, Appellant.
 Nos. 85-5296, 85-5299 to 85-5305.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 12, 1986.
Decided March 5, 1987.
 
 Before HALL, and WILKINSON, Circuit Judges, and HENDERSON, United States District Judge for the District of South Carolina, sitting by designation.
 Kenneth W. Smith; David J. Fudala (Hall, Surovell, Jackson & Colten, P.C., on brief), for appellants.
 Kent S. Robinson, Assistant United States Attorney (Henry E. Hudson, United States Attorney, on brief), for appellee.
 PER CURIAM:
 
 
 1
 In this consolidated appeal, John Howard, Clayton Morris, Carlous Holt, John Wilson and Robert Wylie appeal their jury convictions on charges of conspiracy to file a false claim with the United States government, filing a false claim and receipt of stolen United States property, in violation respectively of 18 U.S.C. Sec.Sec. 286, 287 and 641. in a combined brief, Howard, Morris and Holt jointly assert certain procedural errors while Morris individually raises a general challenge to the sufficiency of evidence. In separate briefs, Wylie and Wilson also challenge the sufficiency of the evidence supporting their convictions. Finding no error below as well as adequate evidence to sustain all convictions, we affirm.
 
 I.
 
 2
 In 1985, all five appellants were incarcerated at the District of Columbia's Lorton Reformatory in Lorton, Virginia. During that time, four tax returns in the names of appellants Holt, Wilson, Wylie and Morris and bearing the Reformatory's return address were received at the Memphis Service Center of the Internal Revenue Service. All four returns claimed a tax refund for tax year 1984.
 
 
 3
 Agents at the Service Center became suspicious when an examination of the returns revealed certain similar characteristics. In addition to the same return address, each return listed the taxpayer as a wage earning employee of the United States Department of Commerce, Patent and Trade Office. On each return and on each accompanying W-2 form, the word "Patent" was misspelled. It was also determined that the Employer Identification Number listed on the w-2 form was no longer in use by the Department of Commerce.
 
 
 4
 Further investigation discovered that John Howard had been an employee of the Patent and Trademark Office during the time when the obsolete Employer identification Number was being used. Records of the Philadelphia Service Center also revealed that a tax return in the name of John Howard had been received at that office for tax year 1983. The filer of that return had also misspelled the word "Patent" and had used the same obsolete identification number found in the four returns under investigation. A refund check issued on the return in the name of John Howard was subsequently deposited in an inmate account at Lorton Reformatory.
 
 
 5
 As part of the investigation, the Treasury Department issued refund checks on all four returns. The checks were delivered by an IRS agent to the mail room at Lorton where they were claimed and subsequently endorsed by Holt, Wilson, Wylie and Morris.
 
 
 6
 On June 26, 1985, federal agents arrived at Lorton to continue the investigation by interviewing all five suspected inmates. Pursuant to prison regulations, the appellants were all removed from the general population and placed in administrative segregation in the Reformatory's Control Building, where they were interviewed individually.
 
 
 7
 Although Wilson and Howard initially refused to answer any questions, they subsequently contacted the investigating agents and agreed to make statements. Before talking with the investigators, both men signed prepared waiver of rights cards, although Howard later declined to sign a written copy of his statement.
 
 
 8
 Howard admitted that he had prepared all four tax returns and signed them in the names of Morris, Wilson and possibly Wylie. According to Howard, he used an old W-2 form which he had obtained while working for the Patent and Trademark Office as a model. Howard also identified a calendar book discovered in a search of his cell in which he had recorded the preparation of all four returns.
 
 
 9
 According to his statements to the investigating agents, Howard approached Holt and Wilson regarding the preparation of false returns. In return for his services, he was to receive a portion of the refund. Howard also stated that he had prepared money orders to assist Holt and Wilson in transferring a portion of the refund to his inmate account.
 
 
 10
 In his statement, Wilson admitted that Howard had prepared the return bearing his name and had received a portion of the refund. Holt also admitted to the investigators that Howard had prepared a return for him. Wylie and Morris denied any intentional involvement with Howard's scheme but both admitted that their correct social security numbers appeared on the tax returns. Trial testimony by an employee of the Reformatory subsequently established that inmates did not ordinarily have access to the social security numbers of other inmates.
 
 
 11
 The cases against all five inmates were consolidated and brought to trial on November 13, 1985. Prior to trial, motions to suppress statements and tangible evidence were offered on behalf of Howard and Wilson. The motions were denied and the challenged evidence admitted at trial. A motion for severance was made on behalf of the defendants but was later withdrawn when the court agreed to redact Certain portions of the statements made by Howard and Wilson. Following a one-day trial, the jury found the defendants guilty on all charges brought against them.
 
 
 12
 This appeal followed.
 
 II.
 
 13
 On appeal, Howard contends that his statements made while in administrative segregation should have been suppressed as involuntary; that the search of his cell which resulted in the discovery of his calendar book was a violation of prison regulations; and that he should have been provided with a handwriting expert to challenge the equivocal testimony of the government's expert. Morris and Holt argue that reversible error was committed by admitting certain statements of a codefendant at their trial. Howard, Morris and Holt jointly contend that they could not properly be convicted of receiving a thing of value "belonging to the United States Government" pursuant to 18 U.S.C. Sec. 6611 when the government failed to prove that it had suffered a property loss. They also argue that their convictions on charges of both filing a false claim and of receiving stolen property constitute double punishment for the same crime. Finally, pursuant to Anders v. California, 386 U.S. 738 (1967), Morris, Wilson and Wylie offer a general challenge to the sufficiency of the evidence. We see no merit in any of these contentions.
 
 
 14
 As an initial matter, we agree with the district court that suppression was not required with regard to appellant Howard's oral statements. It is undisputed that after first refusing to speak with federal agents, Howard initiated further contact. After being advised of his rights in accordance with Miranda v. Arizona, 384 U.S. 436 (1966), Howard expressly waived those rights. Howard's suggestion that the coercive nature of administrative segregation rendered that waiver involuntary is unpersuasive.
 
 
 15
 The validity of a waiver is measured by an assessment of the totality of the circumstances. Carter v. Garrison, 656 F.2d 68 (4th Cir. 1981), cert. denied, 455 U.S. 952 (1982). In the instant case, the waiver was executed by a defendant with an above-average education. There was also no evidence that administrative segregation at Lorton, which was routinely used as part of a normal investigatory process, had any particular coercive attributes. Under the totality of the circumstances, there is simply no reason to view Howard's waiver as involuntary.
 
 
 16
 We likewise agree that the district court was not required to suppress evidence found in Howard's cell. A prisoner has no fourth amendment right of privacy with regard to the contents of his cell. Hudson v. Palmer, --U.S. ----, 104 S.Ct. 3194 (1984). Appellant's contention that his cell was searched in violation of certain prison procedures regarding inmate housing, even if credited, would not create a privacy interest meriting suppression.
 
 
 17
 Howard's final contention that the district court should have provided a handwriting expert to assist the defense borders on frivolity. While the court has the discretion pursuant to 18 U.S.C. Sec. 3006A(e)(1) to appoint experts to assist indigent defendants when "necessary for an adequate defense," it strains credulity to suggest that such an expert would have been of any benefit to Howard. Appellant's corroborated admission that he had prepared the tax returns was, as we have determined, properly in evidence. Any value that Howard could conceivably have derived on the handwriting issue was fully realized when the government's expert conceded that he could identify the writing on the returns with certainty. we, therefore, fail to see any circumstances that would render the district court's denial of Howard's request an abuse of discretion.
 
 III.
 
 18
 Turning next to the allegations of appellants Morris and Holt, we find no error in the admission at their trial of certain codefendant statements. Their joint contention that the post-offense statements of coconspirators cannot be properly offered in evidence until the conspiracy is independently established was clearly rejected by this court in united States v. Mitchell, 733 F.2d 327 (4th Cir. 1984), cert, denied, --U.S. ---, 105 S.Ct. 520 (1985).
 
 
 19
 Appellant Morris' contention that the admission of Howard's statement to the investigating officers incriminated him in violation of his sixth amendment right of confrontation is also without merit. Although the Supreme Court recognized in Bruton v. United States, 391 U.S. 123 (1968) that the introduction of a non-testifying codefendant's statements in a joint trial could violate the confrontational rights of a defendant other than the declarant, exclusion of those statements is not required in all instances. Only when selective redaction and cautionary instructions are insufficient to protect the codefendant's constitutional right to confrontation is a true Bruton problem presented. United States v. Seni, 662 F.2d 277, cert. denied, 455 U.S. 950 (1982).
 
 
 20
 In the instant case, Howard's statement was heavily redacted in response to an earlier motion for severance and an appropriate limiting instruction accompanied its introduction into evidence. Moreover, the only reference to Morris that remained in the statement was not independently incriminating. We, therefore, see no violation of Morris' constitutional right to confrontation in the conduct of his joint trial.
 
 IV.
 
 21
 The combined challenges of appellants Howard, Holt and Morris to their convictions for receiving stolen property pursuant to 18 U.S.C. Sec. 641 are similarly without merit. Contrary to their allegations, there is no doubt that United States Treasury checks are "things of value" within the meaning of the statute. See e.g., United States v. Richardson, 755 F.2d 685 (8th Cir. 1985). We also see no significance in the fact that the government was aware of the scheme and would not have honored the checks. The appellants intentionally obtained physical possession of a thing of value of the United States. The fact that the government had earlier discovered their scheme but allowed it to reach fruition before acting does not relieve the appellants of the responsibility for their criminal actions.
 
 
 22
 We also reject emphatically any suggestion that appellants' convictions for filing a false claim and for receiving stolen property somehow constitute double punishment. Appellants' reliance on Milanovich v. United States, 365 U.S. 551 (1961), in which it was held that a defendant could not be convicted of both larceny and receipt of the same stolen property, is misplaced. Unlike the situation in Milanovich, the convictions in this instance raise no question of statutory interpretation regarding Congress' intent to punish the appellants' actions separately. The filing of a false claim is an offense logically distinct from a violation of the statutory prohibition against receipt of stolen property. See e.g., United States v. Coachman, 727 F.2d 1299 (D.C. Cir. 1984). Punishment for both offenses does not offend the constitutional protection against double jeopardy.
 
 V.
 
 23
 Finally, we reject the challenge to the general sufficiency of evidence offered by appellants morris, Wylie and Wilson. Competent trial evidence demonstrated that Morris received a refund check after a tax return bearing his name and social security number was received by the IRS. Morris accepted the check, endorsed it and mailed it to a cousin without question. Furthermore, certain exculpatory statements made by Morris were shown to be false.
 
 
 24
 Wylie likewise received a refund check, endorsed it, and sent it to an outside checking account, thereby raising a reasonable inference regarding his effort to conceal receipt of the check. Wylie also made statements concerning the likely source of the refund that were shown to be unworthy of belief.
 
 
 25
 With regard to appellant Wilson, the evidence is even stronger. In addition to receiving a fraudulently procured refund check, Wilson admitted his involvement with appellant Howard in the preparation of the return. Reviewing the evidence with regard to all of the appellants in the light most favorable to the prosecution, we are convinced that "a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Hughes, 716 F.2d 234, 239 (4th Cir. 1983).
 
 VI.
 
 26
 For the foregoing reasons, the convictions of all appeallants in this appeal are affirmed.
 
 
 27
 AFFIRMED.