848 F.2d 186
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Adrian M. JAMES, Defendant-Appellant.
 No. 87-5085.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Feb. 1, 1988.
Decided: May 12, 1988.
 
 Henry E. Hudson, United States Attorney, John T. Martin, Assistant United States Attorney, James Lee Buck, 3rd Year Law Student, for appellee.
 Fred Warren Bennett, Federal Public Defender, Stephen J. Cribari, Deputy Federal Defender, for appellant.
 Before SPROUSE and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Adrian M. James appeals a judgment convicting him of possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(c). He contends that the district court erred by allowing the government's case agent to remain in the courtroom. He also complains that the district court failed to question prospective jurors regarding bias in favor of the government. We affirm.
 
 
 2
 Three witnesses testified against James at his trial. The first, Robert Shapiro, was a government informant who testified that he telephoned James several times and arranged to purchase the cocaine. Shapiro's conversations with James were monitored by Drug Enforcement Administration Agent Michael DeSanctis, the case agent who was allowed to remain in the courtroom. Shapiro also testified that, after arranging to purchase the cocaine, he met James at Washington National Airport, wearing a body microphone monitored by DeSanctis. James passed the cocaine to Shapiro while the two men were sitting in James's car. Shapiro returned the cocaine to James and left the car at the pretense of meeting his girlfriend. At this point, DeSanctis seized the cocaine and arrested James.
 
 
 3
 DeSanctis, the second witness to testify against James, corroborated Shapiro's testimony and described his own investigation. DeSanctis also testified that, in his expert opinion, the quantity of cocaine seized from James was inconsistent with personal use and was consistent with the further distribution of the drug. The third witness, a DEA chemist, identified the substance seized from James as cocaine and testified as to chain of custody. James was convicted and received a three-year sentence.
 
 
 4
 James objected to DeSanctis's presence in the courtroom, but he did not actually object to his testifying as the second witness. This alone is probably sufficient to reject his claim of error. See United States v. Mitchell, 733 F.2d 327, 330 (4th Cir.1984); see also United States v. Nix, 601 F.2d 214, 215 (5th Cir.1979). In any event, a government agent properly exempted from a witness sequestration order by Federal Rule of Evidence 615(2) may testify after another witness rather than as the first witness for the government if there are "good reasons" for it. Mitchell, 733 F.2d at 330; United States v. Frazier, 417 F.2d 1138, 1139 (4th Cir.1969). In this case, the government presented the witnesses in the chronological order in which they became involved with James in order to avoid confusing the jury. This is a sufficient reason for allowing DeSanctis to testify after Shapiro. See Mitchell, 733 F.2d at 330; cf. United States v. Parodi, 703 F.2d 768, 773-75 (4th Cir.1983).
 
 
 5
 James also claims that the court should have specifically inquired whether any of the potential jurors "would be inclined to credit the testimony of a government agent more than any other witness" after the court determined that several potential jurors either worked, or had family members working, for law enforcement agencies. James never requested the district court to make such an inquiry and therefore improperly raises the issue for the first time on appeal. Furthermore, after determining that some potential jurors had connections to law enforcement agencies, the district court inquired whether any potential juror felt that he or she "could not sit on [the] jury and render an impartial verdict." The district court's conduct of the voir dire was sufficient to impanel an impartial jury.
 
 
 6
 AFFIRMED.