**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4899

JOSEPH SERIANI, a/k/a Joseph S.
Serian,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert E. Payne, District Judge.
(CR-95-199)

Argued: October 3, 1997

Decided: November 12, 1997

Before RUSSELL and LUTTIG, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert Brooks Ramsey, PRATT, BRADFORD, TOBIN
& ALEXANDER, P.C., East Alton, Illinois, for Appellant. David
Glenn Barger, Assistant United States Attorney, UNITED STATES
ATTORNEY'S OFFICE, Alexandria, Virginia, for Appellee. **ON
BRIEF:** David Jeffrey Ezra, PRATT, BRADFORD, TOBIN &
ALEXANDER, P.C., East Alton, Illinois; Lisa A. Broccoletti, Nor-

folk, Virginia, for Appellant. Helen F. Fahey, United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Defendant Joseph Seriani was convicted of three counts of obstruction of justice and one count of conspiracy for attempting to obtain the premature release of three federal prisoners by sending false letters to two United States District Judges and one United States Attorney. Seriani appeals his convictions and sentence. For the reasons that follow, we affirm.

I.

In January, 1991, Joseph Seriani was paroled after serving time for wire fraud, bank fraud, and various other federal crimes. Seriani moved to Broward, Florida, and subsequently began performing volunteer fund-raising work for Habitat for Humanity of Broward County (Habitat-Broward), a non-profit organization dedicated to building housing for the poor. Habitat-Broward is affiliated with Habitat for Humanity International (Habitat-International). Habitat-Broward later asked Seriani to resign after the organization learned that he had failed to disclose that he was a felon on parole. Seriani resigned in June of 1992.

In early July, 1992, Seriani was offered a temporary position as the Executive Director of Habitat for Humanity, Boca-Delray (Habitat-Boca). Seriani did not inform his new employer that he was a felon on parole. On September 21, 1992, Habitat-Boca notified him that he was being terminated.

2

On that same day, Seriani sent three letters urging the release of three federal prisoners who were housed at the Federal Correctional Institute in Petersburg, Virginia. One letter was written to United States District Judge J. Calvitt Clarke, Jr., in relation to prisoner Richard Hirschfeld; a second letter was written to United States District Judge Richard L. Williams in relation to prisoner Joseph Gaffney; a third letter was sent to United States Attorney Richard Bennett in relation to prisoner Meir Duke.

The letters, which were written on Habitat for Humanity stationery, included representations that Habitat for Humanity "frequently" had requests for and "extensive experience" regarding the placement of federal prisoners into "Work Cadres" as an alternative to incarceration, Supplemental Appendix ("S.A.") at 69-76; that Habitat's "Work Cadre" program had been officially recognized by the Federal Bureau of Prisons, the United States Parole and Probation Departments, and the United States District Courts across the nation as "viable alternatives" to incarceration, Appendix ("A") at 96; that Habitat had performed a careful and objective screening process and evaluation of potential candidate prisoners, A. at 97, and that pursuant to that screening process Habitat had selected prisoners Hirschfeld, Gaffney, and Duke as candidates for its work cadre program. Each letter recommended that one of the prisoners be released from prison so that he could begin working for Habitat. The letters were signed by Seriani, under the name "Dr. Serian," purporting to be the "Executive Director" of various chapters of Habitat (Seriani signed the letters on behalf of Hirschfeld and Gaffney on Habitat-Broward stationery, and he signed the letter on behalf of Duke on Habitat-Boca stationery).

The representations made in these September 21 letters were materially and substantially false. Seriani was never the "Executive Director" of Habitat-Broward, S.A. at 161-2, and at the time of the letters he had been terminated from his position with Habitat-Boca, S.A. 779-82; none of the letters were actually approved by Habitat for Humanity, S.A. 162-63; S.A. 749, 720-22; S.A. 190-95; Habitat-Broward did not have any experience placing federal prisoners in "work cadres" as an alternative to prison, S.A. at 72; Habitat for Humanity had not been officially recognized by the Federal Bureau of Prisons, the United States Parole and Probation Departments, or the District Courts as an alternative to incarceration, S.A. 72-74; Habitat

3

had not performed any careful or objective screening process to select prisoners Hirschfeld, Gaffney, or Duke, and that in fact Seriani acted on behalf of those prisoners because of his friendship with Hirschfeld, S.A. at 76.

The plan to use these letters to obtain the early release of the several inmates was orchestrated by prisoner Hirschfeld. Hirschfeld wrote a letter to Seriani requesting his help, Seriani sent Hirschfeld Habitat for Humanity materials, and Hirschfeld composed letters with those materials and sent the letters to Seriani for Seriani to sign and send out on official Habitat stationery. S.A. 789-91. Hirschfeld's cover letter to Seriani included specific instructions and explanations regarding the scheme. For example, the cover letter included a request that the letters be mailed "by the date on the letter, Sept. 21st," A. at 93. It further admonished Seriani "[p]lease don't change any of these letters," A. at 93. The cover letter even included a description of deliberate ambiguities that Hirschfeld had written into the letters to give Seriani "wiggle room," if necessary. S.A. at 789.

On October 5, 1992, Judge Clarke sent a response to "Dr. Serian" at Habitat, denying his request to reduce Hirschfeld's sentence. On October 8, 1992, Hirschfeld filed a Rule 35 Motion for a reduction of his sentence. While that motion was pending, Seriani sent another letter to Judge Clarke, dated October 14, 1992, asking that the Judge reconsider his earlier denial. That letter was written on Habitat-International stationery, and signed by "Dr. Serian," the "Executive Director" of Habitat for Humanity. The October 14 letter also falsely represented that Judge Williams had approved a similar request relating to a different prisoner, and that 70 inmates had been placed in Habitat's work cadres in the past 30 days alone. S.A. at 83. Attached to the letter was a copy of Seriani's initial September 21 letter. The October 14 letter was also originally composed by Hirschfeld. S.A. at 333. Notwithstanding the October 14 letter, Judge Clarke refused to reconsider his denial of Seriani's earlier request.

On October 5, 1992, prisoner Gaffney filed a Rule 35 Motion for a reduction of his sentence. Attached to his motion was a copy of Seriani's September 21, 1992, letter relating to him. On October 28, 1992, Judge Williams denied his motion. Prisoner Duke also filed a motion with the district court requesting a reduction in his sentence

4

so that he could perform charity work for Habitat for Humanity. Attached to his motion was a copy of the September 21, 1992, Seriani letter urging Duke's release. Duke's motion was also denied.

For writing and sending these letters in an attempt to interfere with the sentences of three federal inmates, Seriani was charged and convicted of conspiracy in violation of 18 U.S.C. § 371, and three counts of obstruction of justice in violation of 18 U.S.C.§ 1503.

II.

Seriani raises several legal challenges to his convictions and sentence, none of which we find persuasive.

First, Seriani challenges his obstruction of justice convictions on the grounds that the government did not establish any "pending judicial proceeding" with which any of his letters may have interfered. To prove a violation of 18 U.S.C. § 1503, the government must establish that the defendant obstructed a "pending proceeding." United States v. Grubb, 11 F.3d 426, 437 (4th Cir. 1993). Seriani contends that, at the time of his letters, prisoners Hirschfeld, Gaffney, and Duke were not involved in any pending judicial proceedings, and thus his letters could not have obstructed justice in violation of section 1503. We disagree.

In United States v. Johnson, 605 F.2d 729 (4th Cir. 1979), we upheld a section 1503 conviction of an already-convicted criminal defendant who attempted to induce an adverse government trial witness to falsely recant his testimony while his direct appeal was being prosecuted in a higher court. In Johnson, we held that a judicial proceeding was still pending in the trial court for the purposes of 18 U.S.C. § 1503 because of the possibility that the Court of Appeals would reverse the defendant's conviction and remand for a new trial during which the government witness could again testify.

Similarly, at the time of Seriani's September 21, 1992, letters, Hirschfeld, Gaffney, and Duke's sentences were all still subject to modification and thus there were pending sentencing proceedings for the purposes of section 1503.

5

Under the prior version of Fed. R. Crim. P. 35, which was applicable to Hirschfeld and Gaffney's sentences, "[a] motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal." Hirschfeld's direct appeal was denied on May 8, 1992, and the mandate issued on June 19, 1992. S.A. at 692-709. Thus, Hirschfeld could have moved for a sentence reduction or the court on its own motion could have reduced his sentence through October 19, 1992. Gaffney was sentenced on June 8, 1992, and his 120 day period under Rule 35(b) expired on October 8, 1992. S.A. at 721. Thus, at the time of Seriani's September 21, 1992, letters, both Gaffney and Hirschfeld's sentences were well within the 120 day period of Rule 35 and thus still subject to modification. Johnson holds that such a possibility of modification of an earlier judgment creates a "pending judicial proceeding" for the purposes of section 1503.

In addition, it is at least clear that a judicial sentencing proceeding was commenced when Hirschfeld actually filed his Rule 35 motion on October 8, 1992. Subsequent to that motion, Seriani sent another false and obstructing letter to Judge Clark on Hirschfeld's behalf. Thus, even if Hirschfeld's sentencing proceeding did not become "pending" until October 8, a rational juror could conclude that Seriani attempted to obstruct that pending proceeding.

Additionally, prisoner Gaffney at the very least commenced a formal sentencing proceeding by moving for Rule 35 relief on October 5, 1992. As Gaffney attached a copy of Seriani's September 21, 1992, letter urging Gaffney's release to that Rule 35 motion, Seriani can also be said to have obstructed Gaffney's sentencing proceeding which became pending when he formally moved for Rule 35 relief.

Finally, Seriani's September 21 letter on behalf of prisoner Duke can be said to have obstructed pending proceedings at least two ways. First, Seriani's September 21 letter on behalf of Duke was sent to a United States Attorney during the time period within which the government was able to move the court for a reduction in Duke's sentence under the current Rule 35. Second, Duke himself later formally moved for a sentence reduction, and attached a copy of Seriani's letter

6

on his behalf to that motion. Thus, Duke's formal motion for a sentence reduction, at a minimum, created a pending sentencing proceeding.

Second, Seriani argues that the trial court, in effect, directed a verdict for the government by instructing the jury that judicial proceedings were pending at the time of Seriani's letters. The court did not, however, direct a verdict for the government. Rather, it instructed the jury that "the Government must prove that a judicial proceeding was pending sometime within the time alleged in each count." S.A. at 670. The court did go on to define that, under the law, the prisoners were parties to pending judicial proceedings "for 120 days from the date the mandate [in their criminal appeals] is received." S.A. at 670. Obviously, this is a reference to the 120 day period under the old Rule 35 during which prisoners Hirschfeld and Gaffney's sentences were still open to modification. Thus, the trial court merely instructed the jury on the law, specifically, that judicial proceedings were pending for 120 days after the entry of mandate in Hirschfeld and Gaffney's criminal convictions. It did not improperly resolve any issues of fact, and the trial court specifically instructed the jury that it "must decide whether and when any such mandate was received." S.A. at 670.

Third, Seriani challenges his obstruction of justice convictions on the grounds that the government did not allege or prove that the "natural and probable consequences" of Seriani's actions was to obstruct justice. Appellant's argument is opaque, but the thrust of his argument is, essentially, that he cannot have obstructed justice because none of his letters was actually successful in obtaining the premature release of any federal prisoners. Obviously, however, a defendant need not actually succeed in his endeavor to obstruct justice; "the defendant need only have had knowledge or notice that success in his fraud would have likely resulted in an obstruction of justice." United States v. Neiswender, 590 F.2d 1269 (4th Cir.), cert. denied, 441 U.S. 963 (1979). Here, the government properly alleged and proved obstruction of justice charges against Seriani because if Seriani had been successful in misleading the courts to reduce the prisoners' sentences, then the natural and probable consequences of that success would have been to obstruct justice.

Similarly, defendant's reliance on United States v. Aguilar, 115 S. Ct. 2357 (1995), is misplaced. In Aguilar, the Supreme Court reversed

7

an obstruction of justice conviction on the grounds that the government's evidence was insufficient to show that the defendant's false statements to FBI agents were intended to obstruct a judicial proceeding, in that case, a grand jury investigation. In fact, in that case the government apparently did not even prove that the defendant knew that his false statements to the FBI would be communicated to the grand jury. Here, in contrast, the government alleged and proved that defendant Seriani made false representations directly to the courts for the purpose of influencing specific cases, and that Seriani knew that his false statements were made directly to the courts.

Fourth, Seriani contends that the government failed to allege in its indictment and prove at trial the essential elements of a conspiracy charge under 18 U.S.C. § 371. Again, we find Seriani's argument unpersuasive. The three elements of a conspiracy under section 371 are: "1) the existence of an agreement, 2) an overt act by one of the conspirators in furtherance of the objective, and 3) an intent on the part of the conspirators to agree as well as to defraud the United States." United States v. Rankin, 870 F.2d 109, 113 (4th Cir. 1989). Here, the government alleged in its indictment that Seriani and one prison inmate discussed using Seriani's connections with Habitat for Humanity to obtain reduced sentences for certain inmates, A. at 88; that Seriani provided that inmate with various Habitat for Humanity materials for that inmate's use in drafting fraudulent letters, A. at 88; that Seriani actually signed those letters that were drafted by the inmate on the stationery provided by Seriani; that Seriani followed Hirschfeld's other detailed instructions on how and when to mail the letters, A. at 88; that the inmate co-conspirator composed the September 21, 1992, letters with language "employed to give [Seriani] `wiggle room,' if necessary," A. at 93; and that Seriani and this co-conspirator generally and willfully conspired to "mak[e] false, misleading and deceitful representations and statements" in order to further the release of certain inmates, A. at 87. These are sufficient allegations to sustain Seriani's indictment for conspiracy to obstruct justice under 18 U.S.C. § 371. Furthermore, our review of the record reveals more than ample evidence to support the jury's verdict on this conspiracy charge.

Fifth, Seriani argues that the district court committed reversible error by admitting hearsay testimony in the form of a letter written

8

from prisoner Hirschfeld to Seriani. Of course, hearsay statements of co-conspirators may be admissible. Fed. R. Evid. 801(d)(2). In this case, we conclude that the district court did not err in allowing the Hirschfeld letter because, prior to the admission of that letter, the government introduced sufficient and independent evidence of the existence of a conspiracy between Seriani and Hirschfeld. S.A. at 283-300. Furthermore, even if the government had not introduced such evidence prior to admission of the Hirschfeld letter, hearsay statements of co-conspirators may themselves be introduced conditionally in order to establish the existence of a conspiracy, see, e.g., United States v. Mitchell, 733 F.2d 327 (4th Cir. 1984), and the Hirschfeld letter here, we conclude, is in itself sufficient to prove the existence of a conspiracy between Seriani and Hirschfeld.

Sixth, Seriani contends that the district court committed reversible error by allowing the government at trial to introduce evidence of Seriani's prior federal convictions. Fed. R. Evid. 404(b) provides that, "[e]vidence of other crimes . . . is not admissible to prove the character of a person in order to show action in conformity therewith," but that such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." We conclude that the district court did not abuse its discretion by permitting the government to introduce evidence of Seriani's prior felony conviction for a purpose other than that Seriani acted in conformity with a bad character trait. In particular, the district court did not abuse its discretion by concluding that Seriani's prior felony convictions were proper res gestae evidence and admissible subject to a proper limiting instruction. S.A. at 18-24.

Finally, we affirm defendant Seriani's sentence and conclude that the district court properly enhanced Seriani's offense level by two levels for obstructing justice in accordance with§ 3C1.1 of the Sentencing Guidelines. During the investigation leading up to his prosecution, Seriani admitted to two government agents that his September 21, 1992, letters were not candid. At trial, however, defendant Seriani denied making those statements. S.A. at 814-16. At sentencing, the district court concluded that the government proved, by a preponderance of the evidence, that Seriani intentionally lied at trial regarding

9

his earlier statements. S.A. 851-52. This conclusion was based upon ample evidence and is not clearly erroneous.

For the reasons stated herein, we affirm the judgment of the district court.

AFFIRMED

10