**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

GREGORY LEE DUFFY, a/k/a G,
        *Defendant-Appellant.*

No. 00-4273

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

JAMES SYLVESTER JONES, a/k/a Big Jimmy,
        *Defendant-Appellant.*

No. 00-4336

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CR-97-248-L)

Argued: January 25, 2002

Decided: March 11, 2002

Before WILLIAMS, MOTZ, and TRAXLER, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded for resentencing by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** G. Godwin Oyewole, Washington, D.C., for Appellant Duffy; Marc Seguinot, LAW OFFICES OF MARC SEGUINOT, Fairfax, Virginia, for Appellant Jones. Christine Manuelian, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Thomas M. DiBiagio, United States Attorney, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Appellants Gregory Duffy and James Jones were charged in a multi-count drug conspiracy indictment and were each convicted of conspiracy to distribute and possess with intent to distribute cocaine and cocaine base and of a substantive distribution charge. *See* 21 U.S.C.A. §§ 841, 846 (West 1999 & Supp. 2001). The district court sentenced Duffy to concurrent terms of 235 months imprisonment and Jones to concurrent terms of 292 months imprisonment. Duffy and Jones appeal, raising various challenges to their convictions and sentences. We affirm the convictions of Duffy and Jones, and we likewise affirm Duffy's sentence, but we vacate Jones's sentence and remand for resentencing.

I.

The indictment alleged that Jones, Duffy, and seven others were members of a large-scale drug conspiracy operating on Maryland's Eastern Shore from July 1995 to August 1996. The government's evidence against Duffy and Jones came primarily from the testimony of three cooperating co-conspirators—James Cephas, Troy Perkins, and James Deshields. Perkins worked undercover for the Drug Enforce-

ment Administration during much of the investigation, and recordings were made of some meetings and telephone conversations between Perkins and the defendants. In general terms, the testimony of Cephas, Perkins, and Deshields established that Jones supplied large quantities of cocaine powder to various members of the conspiracy, including Cephas, Perkins, and Demetrius Davis.

Cephas testified that he obtained approximately ten kilograms of cocaine powder from Jones between 1994 and 1996. Deshields testified that from the winter of 1994 until June 1996, he regularly obtained cocaine from Demetrius Davis, who converted the cocaine powder into crack cocaine at Deshields's request. Davis told Deshields that Jones was his supplier, and Deshields sometimes obtained cocaine powder directly from Jones. From April through July 1996, Duffy worked for Deshields on a daily basis, selling crack cocaine that Deshields "fronted" to him. During this time, Deshields paid Duffy between $1000 and $2000 each week. Duffy was sometimes present when the cocaine powder was converted into crack cocaine, and he "stashed" the crack cocaine at his house for Deshields.

Jones was arrested in April 1998 and his home and his car-detailing business were searched. No drugs were found in either location, but a gym bag and plastic bags with cocaine residue were found at the business, and a shaving kit with cocaine residue was found in the trunk of his car. During the search of Jones's home, a loaded assault pistol and a loaded AK-47 assault rifle were found in a dresser drawer in Jones's bedroom, and a 9-mm handgun loaded with Black Talon bullets was found on the floor by the bed. Additional ammunition and two loaded magazines for the AK-47 were also found during the search of Jones's home. The district court at sentencing relied on this evidence to enhance Jones's base offense level by two levels. *See* U.S.S.G. § 2D1.1(b)(1) (1998).

## II.

Jones and Duffy both argue that the district court erred by denying their motions for severance. The essence of Jones's argument is that he was simply a dealer of cocaine powder who sold to other drug dealers, but that he was not involved in the sale of crack cocaine. The government's evidence against Duffy, however, clearly showed that

Duffy was involved in the sale of crack cocaine. Jones contends that the government failed to establish any meaningful connection between Jones and Duffy and that the jury confused the evidence against him and the evidence against Duffy, wrongly concluding that Jones was involved with the distribution of crack cocaine. Jones also contends that the case was so complex that it was unlikely that the jury would decide his case based only on the evidence against him. In a similar vein, Duffy argues that the evidence against him was minimal and that there was nothing to connect him to much of the evidence against Jones. Duffy suggests that if the jury had not been tainted by the evidence against Jones (which would not have been admissible against Duffy had he been tried separately), it might not have convicted Duffy. We find no merit in these arguments.

Defendants who are alleged to have participated in the same transaction or series of transactions may be charged in a single indictment. *See* Fed. R. Crim. P. 8(b). "The basic rule is that persons who have been indicted together, particularly for conspiracy, should be tried together." *United States v. Tipton*, 90 F.3d 861, 883 (4th Cir. 1996). If a defendant will be prejudiced by a joint trial, however, a district court has the discretion to order separate trials. *See* Fed. R. Crim. P. 14. "The party moving for severance must establish that actual prejudice would result from a joint trial, and not merely that a separate trial would offer a better chance of acquittal." *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995) (citation, alteration, and internal quotation marks omitted). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). A district court's decision on a severance motion is reviewed only for an abuse of discretion. *See United States v. Ford*, 88 F.3d 1350, 1361 (4th Cir. 1996).

Although the government presented relatively little evidence establishing a direct connection between Jones and Duffy, the evidence did show some connection—for example, the evidence showed that Jones supplied cocaine powder to James Deshields, who supplied crack cocaine to Duffy. That there may have been more or stronger evidence against one or the other of the defendants is insufficient to require severance. *See United States v. Brooks*, 957 F.2d 1138, 1145

(4th Cir. 1992) ("The fact that the evidence against one defendant is stronger than the evidence against other defendants does not in itself justify severance."); *United States v. Mitchell*, 733 F.2d 327, 331 (4th Cir. 1984) ("Disparity in the evidence among the parties . . . is a proper ground [for severance] only in the most extreme cases. . . ." (internal quotation marks omitted)). Moreover, nothing in the record suggests that the evidence was so confusing that the jury would have been unable to compartmentalize the evidence against Jones and the evidence against Duffy. Under these circumstances, we cannot conclude that the district court abused its discretion by denying the appellants' severance motions.

III.

Duffy raises two issues stemming from the conduct of the government's rebuttal case. A summary of certain events occurring during the trial is necessary to understand these challenges.

At trial, Duffy's wife testified in his defense. Mrs. Duffy stated that during the time that James Deshields claimed Duffy was selling crack cocaine for him on a daily basis, Duffy was in fact working at various jobs. She testified that Duffy worked for Roadway Package System from 1993 until mid-1995. Duffy was then unemployed for a few weeks, during which time he did odd jobs at A&L Service Center, where Mrs. Duffy worked. He then went to work for Federal Express, where he continued to work until he was arrested in April 1998. During cross-examination, Mrs. Duffy specified that Duffy worked at A&L Service Center in April 1996, and began working for Federal Express in May or June of 1996. She also indicated that Duffy obtained his employment with Federal Express through Vision temporary employment agency.

After Mrs. Duffy testified, DEA Agent Rivello contacted Federal Express to verify when Duffy worked there. The government sought to admit as rebuttal evidence a copy of Duffy's Federal Express application obtained by Agent Rivello. The application, which was filled out by Duffy, was dated November 5, 1996, and showed that Duffy was hired by Federal Express in February 1997. The application did not indicate that he had previously worked for Federal Express. The government therefore argued that the application showed that Duffy

was not working for Federal Express during April-July 1996, the period that James Deshields claimed that Duffy was selling crack cocaine for him.

Duffy initially objected to the use of the application because the government did not intend to call the Federal Express records custodian. Counsel for Duffy then argued that Duffy first worked for Federal Express through the temporary agency, and that Duffy filled out the application in order to become a permanent Federal Express employee. Counsel for Duffy therefore argued that the application was not inconsistent with Mrs. Duffy's testimony and that the government should not be allowed to use the application to impeach her testimony. The district court resolved the issue by directing the attorneys for the government and Duffy to call Federal Express to see if it had any documents establishing that Duffy worked there as a temporary employee before he was hired as a permanent employee. Counsel for Duffy stated that he did not "have any problem doing that." Supp. J.A. 791. After a short recess, the parties returned to the courtroom, and counsel for the government stated that "it's been cleared up and I think we can go ahead with Agent Rivello testifying to it." Supp. J.A. 793.

On direct examination by the government, Agent Rivello testified that the application was dated November 5, 1996, and showed that Duffy was hired by Federal Express in February 1997. Rivello explained that the application did not list any prior employment with Federal Express, but that it did show Duffy's then-current employer as Vision Temporary Agency. Rivello testified that he contacted the employment agency and was informed that Duffy worked for the agency from August 1996 through February 1997, and that he was assigned to Federal Express during that period. Rivello also testified that the Federal Express application did not show that Duffy had ever worked for A&L Service Center, and that he had contacted A&L, which had no employment records for Duffy. Counsel for Duffy cross-examined Rivello about his conversation with the owner of A&L Service Center, but at no point did Duffy raise any objection to any portion of Rivello's rebuttal testimony.

On appeal, Duffy contends that the government's presentation of Agent Rivello's testimony amounted to a violation of the govern-

ment's disclosure obligations. Duffy argues that while his trial attorney knew about the phone call to Federal Express, Agent Rivello failed to disclose that he also contacted the temporary agency and A&L Service Center during the break. Duffy claims that trial counsel had "prepared a strategy, during rebuttal, of addressing only the Federal Express issue," and that "the defense was caught off guard when the Agent revealed, for the first time, during rebuttal that he had additional information from Visions Temp Agency and Mr. Majette, of A&L Service Center." Brief of Appellants at 37-38. Duffy contends that this failure to disclose violated Rule 16 of the Federal Rules of Criminal Procedure and that he was substantially prejudiced, because Rivello's testimony "effectively shattered Mr. Duffy's defense and the credibility of Tammy Duffy." Brief of Appellants at 40.

The government disagrees with part of the factual premise of this argument, stating in its brief that Duffy's trial attorney (who does not represent Duffy in this appeal) actually spoke to an employee of the temporary agency before Agent Rivello took the stand. This assertion is borne out by the record, *see* Supp. J.A. 797, and we therefore will limit our consideration of this issue to Duffy's claim that the government should have disclosed Agent Rivello's conversation with the owner of A&L Service Center. Because Duffy never objected to this testimony and never argued that the government had a duty to disclose the evidence, his claim is reviewed for plain error only. *See, e.g.*, *United States v. Godwin*, 272 F.3d 659, 679 (4th Cir. 2001). In this case, Duffy has failed to establish the existence of any error, plain or otherwise.

The Federal Rules of Criminal Procedure require the government to disclose certain statements made by the defendant that are within the government's control. *See* Fed. R. Crim. P. 16(a)(1)(A). The government must likewise disclose documents and other tangible objects in its possession that "are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant." Fed. R. Crim. P. 16(a)(1)(C).

The record indicates that the government provided the Federal Express application to Duffy as soon as it was obtained, and Duffy does not contend otherwise. The government therefore satisfied any

obligation it had to disclose the application or information contained therein. *See* Fed. R. Crim. P. 16(c) (requiring a party to "promptly notify" the other party if it discovers additional evidence subject to disclosure under Rule 16). Any oral statements made to Agent Rivello by the owner of A&L Service Center simply do not fall within the scope of Rule 16.[1]  *See* Fed. R. Crim. P. 16(a)(2) (stating that Rule 16 "does not authorize the discovery . . . of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500"); 18 U.S.C.A. § 3500(b) (West 2000) ("After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."). We therefore conclude that the government did not breach any disclosure obligation in the course of the presentation of its rebuttal case.[2]

IV.

Jones challenges his conspiracy conviction, arguing that the evidence was insufficient to show that he was a member of a conspiracy to distribute crack cocaine. We must affirm Jones's conviction "if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80 (1942). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

---

[1]Duffy also claims that the government's actions violated a standing discovery order issued by the district court. While no such order is included in the Joint Appendix, Duffy does not contend that the obligations imposed by the order differ in any respect from the obligations imposed by Rule 16.

[2]Duffy also argues for the first time on appeal that the government's failure to call the Federal Express records custodian before introducing the Federal Express application violated his rights under the Confrontation Clause. We reject that claim as wholly without merit.

To prove the existence of the conspiracy, the government must establish that: (1) an agreement existed between two or more persons to distribute and possess with intent to distribute cocaine and crack cocaine; (2) the defendant knew about the conspiracy; and (3) the defendant knowingly and voluntarily became a part of the conspiracy. *See Burgos*, 94 F.3d at 857. Jones concedes that a drug conspiracy existed, but he argues that the government failed to show that he was a member of that conspiracy. Jones contends that the evidence simply established that he was a seller of large quantities of *powder* cocaine and that there was no evidence from which it could be inferred that he knowingly became a part of the conspiracy to distribute *crack* cocaine. We disagree.

The government's evidence established that Jones regularly distributed large amounts of cocaine powder to various members of the conspiracy. For example, James Cephas, one of the cooperating co-defendants, testified that from October 1995 through May 1996, Jones regularly "fronted" him cocaine in amounts ranging from nine ounces to one kilogram. The jury could reasonably infer the existence of a conspiracy from this consistent pattern of fronting a large quantity of drugs over an extended period of time. *See United States v. Mills*, 995 F.2d 480, 485 n.1 (4th Cir. 1993) ("[E]vidence of a buy-sell transaction, when coupled with a substantial quantity of drugs, would support a reasonable inference that the parties were coconspirators."); *United States v. Moran*, 984 F.2d 1299, 1303 (1st Cir. 1993) ("A pattern of sales for resale between the same persons, together with details supplying a context for the relationship, might well support a finding of conspiracy."). Because there was sufficient evidence from which the jury could find the existence of a conspiracy, the absence of any direct evidence of an explicit agreement between Jones and the other members of the conspiracy is immaterial. *See, e.g., United States v. Collazo*, 732 F.2d 1200, 1205 (4th Cir. 1984) (explaining that a criminal conspiracy "can be shown by circumstantial evidence such as [the defendant's] relationship with other members of the conspiracy, the length of this association, his attitude, conduct, and the nature of the conspiracy").

And while the evidence showed that Jones himself only sold powder cocaine, and never crack cocaine, that does not undermine Jones's conviction. The government's evidence established that Jones was

well aware that his cocaine powder was being converted into crack cocaine. When one batch of powder did not convert properly, Cephas complained to Jones about it and cooked a gram of cocaine in Jones's presence to show him what was happening. In addition, the government's evidence established that Jones once gave advice to Deshields about cooking the powder into an oil base. This evidence is sufficient to connect Jones to the conspiracy to distribute crack, even if Jones himself never sold crack. *See United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993) ("It is of course elementary that one may be a member of a conspiracy . . . *without taking part in the full range of its activities. . . .*" (emphasis added)); *see also Burgos*, 94 F.3d at 862 (explaining that "the Government must prove the existence of a conspiracy beyond a reasonable doubt, but upon establishing the conspiracy, only a slight connection need be made linking a defendant to the conspiracy to support a conspiracy conviction, although this connection also must be proved beyond a reasonable doubt"). We therefore conclude that the government presented sufficient evidence from which the jury could find Jones guilty of the conspiracy charge.

V.

Jones and Duffy also raise various challenges to their sentences.

A.

Both Duffy and Jones challenge their sentences in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Promise*, 255 F.3d 150 (4th Cir. 2001) (en banc), *petition for cert. filed*, Sept. 20, 2001 (No. 01-6398). The indictment in this case did not allege the quantity of drugs involved. Therefore, under *Apprendi* and *Promise*, Duffy and Jones could not be sentenced on each count of conviction to more than the twenty-year maximum sentence authorized by 21 U.S.C.A. § 841(b)(1)(C) (West Supp. 2001), which governs offenses involving an unspecified quantity of drugs. *See Promise*, 255 F.3d at 156. Because the defendants raise this issue for the first time on appeal, our review is for plain error only. *See United States v. Angle*, 254 F.3d 514, 517 (4th Cir.) (en banc), *cert. denied*, 122 S. Ct. 309 (2001).

Duffy received a sentence of 235 months on both counts of conviction. Accordingly, no *Apprendi* error occurred. *See id.* at 518. Jones,

however, received sentences of 292 months, which exceed the twenty-year maximum authorized by the facts as found by the jury. Nonetheless, we conclude that Jones cannot establish that this error affected his substantial rights. *See, e.g.*, *United States v. Stewart*, 256 F.3d 231, 252 (4th Cir.) (explaining that plain error will be noticed only if, *inter alia*, the error affects the defendant's substantial rights), *cert. denied*, 122 S. Ct. 633 (2001).

Jones was convicted on two counts of the indictment—conspiracy and a substantive distribution count. "In the case of multiple counts of conviction, the guidelines instruct that if the total punishment mandated by the guidelines exceeds the highest statutory maximum, the district court must impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment." *United States v. White*, 238 F.3d 537, 543 (4th Cir.), *cert. denied*, 121 S. Ct. 2235 (2001); *see* U.S.S.G. § 5G1.2(d). Therefore, even though the sentence on each count of Jones's conviction is limited by *Apprendi* and *Promise* to 240 months, the district court would have been obligated by section 5G1.2(d) to structure Jones's sentences to reach the 292 months mandated by the guidelines. Because the sentence imposed by the district court was not longer than the sentence to which Jones would otherwise have been subject, the *Apprendi* error did not affect Jones's substantial rights. *See White*, 238 F.3d at 542-43.

B.

When calculating Jones's base offense level, the district court concluded that Jones should be held responsible for at least 1.5 kilograms of crack cocaine, which resulted in a base offense level of 38. Jones appears to challenge both the quantity determination and the decision to hold him responsible for crack cocaine rather than powder cocaine. Jones contends that the evidence upon which the quantity determination was made—the testimony of his co-conspirators—was not reliable because it came from convicted felons who were testifying under plea agreements that offered the possibility of reduced sentences and because it was not supported by any other evidence. Jones also argues that while he could have reasonably foreseen that his powder cocaine was being converted into crack, he did not agree to participate in the distribution of crack, and he therefore should be held responsible only for powder cocaine. We disagree.

The testimony of Cephas, Perkins, and Deshields established that Jones was involved with large quantities of cocaine powder (at least ten kilograms sold to Cephas alone), and the evidence likewise established that Jones knew that most, if not all, of that powder cocaine was being converted into crack cocaine. This evidence is more than sufficient to support the district court's conclusion that Jones was responsible for at least 1.5 kilograms of crack cocaine. That the evidence came from drug dealers who Jones contends should not be believed is not a reason to reverse the district judge's factual conclusion as to the quantity of drugs that should be attributed to Jones. *See United States v. Fisher*, 58 F.3d 96, 100 (4th Cir. 1995) ("Issues involving the quantity of drugs properly attributable to a defendant are typically questions of fact for resolution by the district court, and we will overturn the district court's determinations only if they are clearly erroneous. Similarly, the credibility of a testifying co-conspirator is for the sentencing judge to assess." (citation omitted)). The evidence discussed above that supports Jones's conviction for conspiring to distribute crack cocaine is likewise sufficient to support the district court's decision to hold Jones responsible for crack cocaine rather than powder cocaine. *See* U.S.S.G. § 1B1.3(a)(1)(B) (defining relevant conduct in the case of a jointly undertaken criminal activity as including "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity").

C.

As noted above, a loaded AK-47, two loaded handguns, and extra ammunition and magazines were found in Jones's home when he was arrested in 1998. During sentencing, the district court applied a two-level enhancement to Jones's base offense level for his possession of a firearm in connection with his drug offenses, pursuant to section 2D1.1(b)(1) of the Sentencing Guidelines. On appeal, Jones contends that the district court erred in applying the enhancement because the government failed to connect his possession of the weapons to his drug crimes. We agree.

Section 2D1.1(b)(1) provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" in connection with the drug offense. U.S.S.G. § 2D1.1(b)(1) (1998). The commentary to section 2D1.1 explains that the weapons enhancement should

be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). The government need not establish a perfect overlap between the possession of the firearm and the commission of the drug offense before the enhancement will be proper. That is, "enhancement under Section 2D1.1(b)(1) does not require proof of precisely concurrent acts, for example, gun in hand while in the act of storing drugs, drugs in hand while in the act of retrieving a gun." *United States v. Harris*, 128 F.3d 850, 852 (4th Cir. 1997) (alteration and internal quotation marks omitted). Instead, "possession of the weapon during the commission of the offense is all that is needed to invoke the enhancement." *United States v. Apple*, 962 F.2d 335, 338 (4th Cir. 1992); *accord United States v. McAllister*, 272 F.3d 228, 234 (4th Cir. 2001) ("In order to prove that a weapon was present, the Government need show only that the weapon was possessed during the relevant illegal drug activity."). Evidence of firearms in proximity to illegal drugs can support a conclusion that the firearms were possessed during the commission of the drug offense. *See Harris*, 128 F.3d at 852 (noting that "the proximity of guns to illicit narcotics can support a district court's enhancement of a defendant's sentence under Section 2D1.1(b)(1)").

In this case, although drug residue was found at Jones's business and there was evidence establishing that drug transactions occurred at the business, no guns or ammunition were found there. Instead, the guns and ammunition were found in Jones's home more than a year after the end of the conspiracy as charged in the indictment, but no drugs, drug residue, or drug paraphernalia were found at the house. As the government concedes, there was no evidence presented at trial or during sentencing that any drug transactions occurred at Jones's home, nor was there any evidence that any other acts in furtherance of the conspiracy took place at Jones's home. *See Apple*, 962 F.2d at 338 (noting, as to the defendant's argument that "there must be some geographical and temporal proximity between the weapon and the commission of the offense, . . . it is clear under the Guidelines that when the offense committed is conspiracy, these proximity conditions are met when the weapon is discovered *in a place where the conspiracy was carried out or furthered*" (emphasis added)). The government likewise failed to present any evidence establishing that Jones was known to carry a gun during drug transactions or that otherwise placed a gun in Jones's hand (literally or figuratively) during the

course of the conspiracy. *Cf. McAllister*, 272 F.3d at 234 (reversing section 2D1.1(b)(1) enhancement where the evidence established only that the defendant possessed a gun on various occasions, but did not establish that the defendant possessed a gun during the drug transactions for which he was convicted).

Under these circumstances, we conclude that the government failed to carry its burden of establishing the propriety of the section 2D1.1(b)(1) enhancement. *See, e.g.*, *United States v. Urrego-Linares*, 879 F.2d 1234, 1239 (4th Cir. 1989). We therefore vacate Jones's sentence and remand for resentencing.[3]

## VI.

For the foregoing reasons, we affirm Duffy's convictions and sentence. We also affirm Jones's convictions, but we vacate his sentence and remand for resentencing in accordance with this opinion.

*AFFIRMED IN PART; VACATED IN PART
AND REMANDED FOR RESENTENCING*

---

[3]The government suggests that the enhancement was proper given the dangerous nature of the weapons and the fact that they were found fully loaded and in easily accessible locations. In this case, however, we cannot conclude that these facts are sufficient, in and of themselves, to support the offense-level enhancement under section 2D1.1.