**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 23, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 14-3018

KENNIN DEWBERRY,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 5:11-CR-40078-JAR-6)**

O. Dean Sanderford, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the supplemental brief, and Dionne M. Scherff, Erickson Scherff, LLC, Overland Park, Kansas, on the brief), Office of the Federal Public Defender for the Districts of Colorado and Wyoming, Denver, Colorado, appearing for Defendant - Appellant.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief), Office of the United States Attorney for the District of Kansas, Topeka, Kansas, appearing for Plaintiff - Appellee.

Before **LUCERO**, **MATHESON**, and **BACHARACH**, Circuit Judges.

**MATHESON**, Circuit Judge.

Kennin Dewberry supplied significant amounts of powder cocaine to Virok Webb

and his associates, who ran a drug distribution ring out of Junction City, Kansas. Mr.

Webb and his associates would transform some of this powder into crack cocaine[1] and expand the rest of it into more (albeit diluted) powder cocaine by using a process dubbed the "trick." Mr. Webb and his associates then sold the crack and powder to dealers and drug users.

Based on this drug activity, the Government charged Mr. Dewberry and several other codefendants with conspiracy to distribute 280 grams or more of a mixture or substance containing a detectable amount of crack cocaine (Count 1) and conspiracy to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of powder cocaine (Count 2). Only Mr. Dewberry went to trial, with the other codefendants entering into plea agreements with the Government. A jury found Mr. Dewberry guilty on both charges. The jury also returned special verdicts pertaining to the amount of drugs and finding he conspired to distribute 280 grams or more of crack and 5 kilograms or more of powder. The district court sentenced Mr. Dewberry to the mandatory minimum of 20 years in prison on Count 1 and 168 months on Count 2. It determined both sentences would run concurrently.

On appeal, Mr. Dewberry challenges (A) the sufficiency of the evidence for the two conspiracy convictions, (B) the sufficiency of the evidence for the jury's finding that he was accountable for 280 grams or more of crack, (C) the district court's imposition of

---

[1] The relevant statutes and Guidelines provisions in this case use the term "cocaine base," which is also referred to as "crack." *See* U.S.S.G. § 2D1.1(c)(D) (2013). We use "crack" throughout this opinion to easily distinguish cocaine base from powder cocaine.

a 168-month prison term on Count 2,[2] and (D) the district court's denial of his initial pretrial motion to sever.[3] Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I. BACKGROUND

### A. *Factual History*

The investigation of Mr. Webb's drug-dealing activities began in 2009 or 2010. Mr. Webb was the "top guy" in a powder and crack cocaine drug ring in the Junction City area of Kansas. ROA, Vol. III at 23-24. His first source of drug supply, Sammy Ray Smith, Jr., lived in Wichita, Kansas. In the summer of 2009, Mr. Smith was shot and killed. After Mr. Smith's death, Mr. Webb secured Mr. Dewberry, his half-brother, as his new source of supply. Mr. Dewberry lived in Kansas City, Missouri, a two-hour drive from Junction City.

Megan Fuller and Michael Lillibridge were two of Mr. Webb's drivers. They would drive to Kansas City to retrieve cocaine from Mr. Dewberry. Ms. Fuller and other witnesses testified that they received only powder cocaine from Mr. Dewberry. By contrast, in the past, Mr. Webb had received crack cocaine from Mr. Smith. From the

---

[2] As we explain in more detail below, the quantity of crack is relevant to both the conviction and sentence on Count 1 and the sentence on Count 2.

[3] The court later granted his second pretrial motion to sever.

summer of 2009 to March 2010, Mr. Webb was buying about 4.5 to 9 ounces of powder cocaine from Mr. Dewberry on a weekly basis.[4]

Ms. Fuller and Mr. Lillibridge would bring the powder cocaine to Junction City, where drug ring members would cook some of it into crack cocaine or cut it with other ingredients—in a process dubbed the "trick"—to double the quantity of powder. Mr. Webb would then distribute the drugs for resale. Several people testified at trial that Mr. Webb sold both powder and crack cocaine. Only Mr. Lillibridge testified Mr. Webb "almost exclusively" sold crack. *Id*. at 279.

### B. *Procedural History*

1. **Trial**

On October 19, 2011, a grand jury returned a superseding indictment charging Mr. Dewberry, Mr. Webb, Ms. Fuller, and others with two drug conspiracies. Count 1 charged them with conspiring to distribute 280 grams or more of crack cocaine in violation of 21 U.S.C. § 846, with reference to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). Count 2 charged them with conspiring to distribute 5 kilograms or more of powder cocaine in violation of 21 U.S.C. § 846, with reference to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii). The Government also filed an information stating Mr. Dewberry had a prior felony marijuana conviction, which would increase his mandatory minimum sentences on each of the two charges.

---

[4] One ounce equals 28.3495 grams, a conversion that is relevant for our later discussion of drug amount calculations for sentencing.

On March 8, 2012, Mr. Dewberry filed a motion to sever, arguing "[a] joint trial in the present case will result in great prejudice to Ke[n]nin Dewberry and a denial of his Sixth Amendment rights to confront witnesses against him as well as his Sixth Amendment right to a speedy trial." ROA, Vol. I at 62. On April 5, 2012, the district court denied his motion without prejudice, deeming it premature. On February 14, 2013, Mr. Dewberry filed a second motion to sever. *Id*. at 92-96. On March 5, 2013, the district court granted Mr. Dewberry's motion.

Mr. Dewberry's trial began on July 22, 2013. The Government's case against Mr. Dewberry was based almost entirely on the testimony of cooperating witnesses, including Ms. Fuller and Mr. Lillibridge. Mr. Lillibridge, in particular, testified that Mr. Dewberry and Mr. Webb had together, on one occasion, cooked powder cocaine into crack cocaine. All the witnesses had entered into plea agreements with the Government.

Mr. Dewberry moved for a judgment of acquittal at the close of both the Government's case and his case under Rule 29 of the Federal Rules of Criminal Procedure. The court denied both motions. The jury convicted Mr. Dewberry on both counts. The jury also returned special verdicts pertaining to the amount of drugs and finding he conspired to distribute 280 grams or more of crack and 5 kilograms or more of powder. Mr. Dewberry moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, which the district court denied.

2. **Sentencing**

The U.S. Probation Office prepared a presentence report ("PSR") that analyzed the amount of drugs attributable to Mr. Dewberry and calculated his Guidelines range on

each offense.  The parties discussed the PSR's calculations at the sentencing hearing, ROA, Vol. IV at 232-62, and in their briefs, Aplt. Br. at 24-26; Aplt. Supp. Br. at 6-8; Aplee. Br. at 27-30.  The district court adopted the PSR's calculations.  ROA, Vol. IV at 261.  We briefly recount this information from the PSR discussed at the sentencing hearing and in the parties' briefs.

The PSR determined the trial evidence established that Mr. Dewberry provided Mr. Webb between 4.5 and 9 ounces of cocaine per week from at least October 1, 2009 to February 28, 2010.  The PSR therefore recommended that Mr. Dewberry be held accountable for 4.5 ounces per week for 21 weeks.  It then estimated that out of the 4.5 ounces of powder cocaine Mr. Webb received weekly, he converted 2.5 ounces into crack, for a 21-week total of 52.5 ounces or 1,488.375 grams of crack, which equals 5,314.98 kilograms in marijuana equivalent.[5]  The remainder of the weekly powder cocaine—2.0 ounces—was doubled to 4.0 ounces by employing the trick, for a 21-week total of 84 ounces or 2,381.40 grams of powder.  This equals 476.28 kilograms in marijuana equivalent.  The crack and powder cocaine calculations in total equaled 5,791.26 kilograms in marijuana equivalent.

The PSR determined a base and total offense level of 34.  *See* U.S.S.G. § 2D1.1(c)(3) (2013) (providing a 21 U.S.C. § 846 offense involving at least 3,000 kilograms but not more than 10,000 kilograms of marijuana equivalent has a base offense

---

[5] The Guidelines provide that when combining different controlled substances to obtain a single offense level, each of the drugs must be converted to its marijuana equivalent and then added together.  U.S.S.G. § 2D1.1, cmt. n.8(B) (2013).  One gram of cocaine is equal to 200 grams of marijuana, and one gram of crack is equal to 3,571 grams of marijuana.  *Id*. at cmt. n.8(D) (2013).

level of 34). The offense level combined with Mr. Dewberry's criminal history category of II yielded a Guidelines range of 168 to 210 months. But the PSR noted Mr. Dewberry faced a mandatory minimum sentence of 20 years (240 months) on each count based on the quantity distributed and his prior felony conviction. *See* 21 U.S.C. § 841(b)(1)(A).

Mr. Dewberry filed written objections to the PSR's crack cocaine calculation, noting that only Mr. Lillibridge's testimony implicated him in any crack-related activities. This testimony—which concerned a single cook of 3.5 grams of cocaine—did not, he contended, establish that the large quantities of powder Mr. Webb converted into crack cocaine were reasonably foreseeable to Mr. Dewberry.

At the sentencing hearing on January 27, 2014, the district court rejected Mr. Dewberry's objection to the PSR's crack cocaine calculation. The court noted, "Mr. Dewberry wasn't engaged in selling crack cocaine; he was engaged in selling powder cocaine to Mr. Webb, who in turn turned it into crack cocaine." ROA, Vol. IV at 247. Nevertheless, the court found it was reasonably foreseeable to Mr. Dewberry that Mr. Webb was producing and selling crack cocaine. The court relied on Mr. Lillibridge's testimony that Mr. Dewberry witnessed Mr. Webb cooking powder into crack: "Whether that was one occasion or 200 occasions, what that evidence illustrates is that Mr. Dewberry was aware that Mr. Webb distributed crack cocaine, that he was at least turning part of the powder cocaine into crack cocaine." *Id*. at 247-48. The court also noted, "Megan Fuller, though, also testified that Mr. Dewberry was aware of Mr. Webb distributing crack cocaine." *Id*. at 248.

- 7 -

The district court sentenced Mr. Dewberry to 240 months on Count 1 and 168 months on Count 2, with the sentences to run concurrently.[6] The court also sentenced him to 10 years of supervised release on Count 1 and 8 years on Count 2, to run concurrently.

Mr. Dewberry appeals his convictions and sentence.

## II. DISCUSSION

We affirm on all four issues presented in this appeal. The first two issues are sufficiency-of-the evidence challenges that stem from the district court's denial of two motions. In his motion for a judgment of acquittal brought under Rule 29 of the Federal Rules of Criminal Procedure, Mr. Dewberry argued the Government (A) had not proven a prima facie case on either Count 1 or 2 and (B) had not proven the drug quantities in either count. In his motion for a new trial brought under Rule 33 of the Federal Rules of Criminal Procedure, Mr. Dewberry argued the testimony of the Government witnesses was uncorroborated and not credible, which also appears to be the basis for his first motion regarding the lack of proof for a prima facie case. The district court denied both motions.

### A. *Sufficiency of the Evidence on Counts 1 (Crack) and 2 (Powder): Witness Corroboration and Credibility*

Mr. Dewberry's first sufficiency-of-the-evidence challenge contends the prosecution failed to prove a prima facie case because it relied on cooperating witnesses who lacked credibility and because it did not corroborate their testimony. It is unclear

_____

[6] We explain below why Mr. Dewberry did not receive a 20-year mandatory minimum sentence on Count 2.

whether Mr. Dewberry appeals the denial of the motion for a judgment of acquittal, the motion for a new trial, or both, but, as explained below, this does not affect our disposition of this issue.

1. **Standard of Review**

We review a district court's denial of a motion for a judgment of acquittal under a de novo standard. *See United States v. Vigil*, 523 F.3d 1258, 1262 (10th Cir. 2008). "We review the district court's denial of a Rule 33 motion for abuse of discretion, reversing only if the court made a clear error of judgment or exceeded the bounds of permissible choice under the circumstances." *United States v. Zabriskie*, 415 F.3d 1139, 1144 (10th Cir. 2005).

Sufficiency-of-the-evidence challenges made in a Rule 29 or Rule 33 motion are adjudicated and reviewed under the same standard. *Compare United States v. Vallo*, 238 F.3d 1242, 1246-48 (10th Cir. 2001) (applying the sufficiency-of-the evidence standard to the denial of a Rule 29 motion), *and Zabriskie*, 415 F.3d at 1144 (applying the sufficiency-of-the-evidence standard to the denial of a Rule 33 motion when the underlying challenge concerned the sufficiency of the evidence).

"We review a sufficiency of the evidence challenge de novo, viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government." *United States v. Hale*, 762 F.3d 1214, 1222 (10th Cir. 2014) (quotations omitted). "We will reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 1222-23 (quotations omitted). In other words, we ask whether "a reasonable jury could find the defendant guilty."

*United States v. King*, 632 F.3d 646, 650 (10th Cir. 2011) (quotations omitted). "In conducting this review we may neither weigh conflicting evidence nor consider the credibility of witnesses. It is for the jury, as the fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences from the facts presented." *United States v. McKissick*, 204 F.3d 1282, 1289-90 (10th Cir. 2000) (quotations and citation omitted). That is, "we owe considerable deference to the jury's verdict." *United States v. Mullins*, 613 F.3d 1273, 1280 (10th Cir. 2010).

"While undoubtedly deferential, this review has some bite: if the evidence does no more than raise a mere suspicion of guilt or requires piling inference upon inference to conclude the defendant is guilty, we will reverse the conviction." *Id.* (quotations omitted). "While the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than speculation and conjecture to be reasonable . . . ." *United States v. Arras*, 373 F.3d 1071, 1073 (10th Cir. 2004) (quotations omitted). And "[t]he evidence presented to support a conviction must be substantial." *United States v. Morales*, 108 F.3d 1213, 1221 (10th Cir. 1997).

2. **Analysis**

We understand Mr. Dewberry to contend the Government witnesses' testimony was uncorroborated and not credible. In his brief, he asserts, "The testimony of alleged co-conspirators without additional substantive evidence is insufficient to establish that Mr. Dewberry participated in a conspiracy . . . ." Aplt. Br. at 14-15. He also writes that the "cooperating individuals possess a self interest that cannot be overlooked and should be supported by corroborating evidence." *Id*. at 16.

We reject Mr. Dewberry's argument and affirm on this issue. First, assuming the testimony was uncorroborated, "[w]e will not reverse a conviction merely because the verdict was grounded on the uncorroborated testimony of a coconspirator." *United States v. Ivy*, 83 F.3d 1266, 1284 (10th Cir. 1996); *see United States v. Magallanez*, 408 F.3d 672, 682 (10th Cir. 2005) ("A conviction may stand merely on the uncorroborated testimony of an accomplice.").

Second, credibility challenges are generally disfavored, and Mr. Dewberry gives us no reason to entertain them here. "It is not our function to assess the credibility of the witnesses on appeal; that task is reserved for the jury." *United States v. Fox*, 902 F.2d 1508, 1515 (10th Cir. 1990). "We will not hold that testimony is, as a matter of law, incredible unless it is unbelievable on its face, i.e., testimony as to facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature." *United States v. Mendez-Zamora*, 296 F.3d 1013, 1018 (10th Cir. 2002). Mr. Dewberry does not assert the witness testimony was unbelievable on its face. He suggests the witnesses testified out of self-interest because they were offered plea deals, but this is common in criminal prosecutions and does not necessarily render testimony incredible. *See United States v. Whitney*, 229 F.3d 1296, 1306 (10th Cir. 2000) (noting the government can ask a witness about a guilty plea so that a jury can assess the witness's credibility, implying a guilty plea does not automatically make a witness incredible).

### B.   *Sufficiency of the Evidence on Count 1 (Crack): Drug Quantity*

Mr. Dewberry also argues the evidence was insufficient to establish that he conspired to distribute 280 grams or more of crack. We review this issue under the same sufficiency-of-the evidence standard discussed above.

Count 1 charged Mr. Dewberry with conspiring to distribute 280 grams or more of crack cocaine, in violation of 21 U.S.C. § 846, with reference to penalty section 21 U.S.C. § 841(b)(1)(A)(iii), which imposes a 10-year mandatory minimum sentence for distributing this quantity of crack cocaine. Mr. Dewberry's prior conviction for a felony drug offense raised the mandatory minimum on Count 1 to 20 years. 21 U.S.C. § 841(b)(1)(A). If he had been found instead to have distributed only 28 grams or more and less than 280 grams of crack, with his prior conviction, he would have been subject to a 10-year mandatory minimum. *See id.* § 841(b)(1)(B).

Because the indictment's allegation that Mr. Dewberry conspired to distribute 280 grams or more of crack cocaine increased Mr. Dewberry's statutory mandatory minimum exposure, the 280-gram amount was an element of the offense and had to be proved at trial. *See Alleyne v. United States*, 133 S. Ct. 2151, 2158 (2013). In reaching its guilty verdict on Count 1, the jury made a special finding that the Government had "proved beyond a reasonable doubt that the defendant . . . conspired to distribute 280 grams or more of . . . crack cocaine." ROA, Vol. I at 187.

A defendant may challenge whether the evidence is sufficient—as Mr. Dewberry does here—to support the jury's determination as to any element of a charge, including its drug quantity determination. *See United States v. Segura-Baltazar*, 448 F.3d 1281,

1292 (11th Cir. 2006) ("We believe the argument Segura-Baltazar has made is more in the nature of a challenge to the sufficiency of the evidence. Essentially, he says that the evidence was insufficient to support the drug quantity necessary to trigger the mandatory minimum. We do not read his challenge as addressing the district court's guideline calculation."); *United States v. Ricketts*, 317 F.3d 540, 545 (6th Cir. 2003) ("The district court cannot ignore the jury's findings as to drug quantity unless there is insufficient evidence to support those findings.").

A defendant can be held "accountable for that drug quantity which was within the scope of the agreement and reasonably foreseeable" to him. *United States v. Arias-Santos*, 39 F.3d 1070, 1078 (10th Cir. 1994);[7] *see also United States v. Evans*, 970 F.2d 663, 678 (10th Cir. 1992) (suggesting a jury can make "findings as to how much crack cocaine the conspiracy handled or the amount of crack that was foreseeable to each defendant"). Here, the jury must have based its finding of 280 grams or more of crack on reasonable foreseeability because there is no evidence in the record Mr. Dewberry actually handled this amount. Mr. Dewberry challenges whether such a quantity could have been reasonably foreseeable to him.

We hold there was sufficient evidence for a reasonable jury to make this finding. Mr. Dewberry's participation in an extensive powder cocaine conspiracy combined with

---

[7] Our case law holds a defendant accountable for drug quantities that are *both* within the scope of the agreement *and* reasonably foreseeable to the defendant. *See United States v. Asch*, 207 F.3d 1238, 1245 n.7 (10th Cir. 2000); *Arias-Santos*, 39 F.3d at 1078. Mr. Dewberry contests only the reasonable foreseeability of the drug quantity, not whether the quantity was within the scope of the agreement. As such, we discuss only reasonable foreseeability.

Mr. Lillibridge's testimony was sufficient for a reasonable jury to find that Mr. Dewberry could have foreseen that Mr. Webb would convert powder cocaine into 280 grams or more of crack cocaine.[8] As such, we affirm Mr. Dewberry's conviction and 240-month sentence on Count 1.

Circuit court decisions about conspiracies involving two different drugs are instructive here. In *United States v. Dickey*, 736 F.2d 571, 583, 585 (10th Cir. 1984), this court upheld a conviction for conspiracy to distribute marijuana and cocaine. Appellant Smith argued "his involvement merely in *two marijuana transactions* may not raise a presumption of his knowledge of a scheme to distribute *cocaine*." *Id*. at 585 (emphasis in original). We rejected his argument:

> Because Smith was involved in transactions involving large amounts of marijuana (600 pounds at one time), *his knowledge of a broader venture is readily subject to an inference*. Further, the several calls from his telephone to [co-conspirators'] telephones make the inference of his connection even more reasonable. Finally, Smith's contention that he may not be connected to the single scheme because of the absence of his actual knowledge of cocaine distribution is without merit. It is fundamental that a party may join an ongoing conspiracy during its progress and become criminally liable for all acts done in furtherance of the scheme.

*Id*. (emphasis added) (citation and quotations omitted).

Other circuits have emphasized that a conviction for one drug can be upheld even when a defendant dealt mostly with another drug in light of some evidence indicating

---

[8] In addition to Mr. Lillibridge's testimony, the district court also asserted that "Megan Fuller . . . testified that Mr. Dewberry was aware of Mr. Webb distributing crack cocaine." ROA, Vol. IV at 248. In its briefing, the Government concedes it "is not aware of any record support for this statement." Aplee. Br. at 29 n.7. The Government also conceded at oral argument that it does not rely on Ms. Fuller's testimony to support its argument on this issue because her testimony concerned the trick, not crack. As such, we will not consider this testimony here.

knowledge of a conspiracy with the first drug. In *United States v. Akins*, 746 F.3d 590, 607 (5th Cir. 2014), the Fifth Circuit upheld a jury's determination that Appellant Akins was responsible for 5 kilograms or more of powder cocaine even though most of his "direct dealings focused on crack cocaine." Mr. Akins could be held responsible for the powder given his "substantial role in the conspiracy and his relationship to the other co-conspirators." *Id*. The court also noted Mr. Akins had some direct dealings in powder: "Trentargus Holt, a cocaine dealer and cooperating witness, testified that he bought half an ounce to an ounce of powder cocaine a couple of time[s] per week from Akins from the early part of 2006 to that summer." *Id*. at 607 & n.38.

In *United States v. Duffy*, 30 F. App'x 240, 246 (4th Cir. 2002) (unpublished),[9] the Fourth Circuit considered Appellant Jones's challenge to his conviction for conspiracy to distribute crack. He argued that although he was a seller of large quantities of *powder*, there was no evidence that he knowingly became a part of the conspiracy to distribute *crack*. *Id*. The court disagreed, first noting Mr. Jones regularly distributed large amounts of powder and then determining that although he never sold crack, that did not undermine his conviction:

> The government's evidence established that Jones was well aware that his cocaine powder was being converted into crack cocaine. When one batch of powder did not convert properly, [a co-conspirator] complained to Jones about it and cooked a gram of cocaine in Jones's presence to show him what was happening. In addition, the government's evidence established that Jones once gave advice to [another co-conspirator] about cooking the powder into an oil base. This evidence is sufficient to connect Jones to the conspiracy to distribute crack, even if Jones himself never sold crack.

---

[9] Although unpublished, this decision nonetheless has instructive value.

- 15 -

*Id*. at 247.

In the instant case, a reasonable jury could find that Mr. Dewberry could have foreseen that Mr. Webb converted powder into 280 grams or more of crack based, in part, on his involvement in a large powder conspiracy. Mr. Dewberry became Mr. Webb's source of powder cocaine supply after Mr. Smith passed away. Mr. Dewberry personally sold Mr. Webb and his associates powder cocaine once or twice a week, in quantities between 4.5 and 9 ounces, from about the summer of 2009 to about March 2010. Mr. Dewberry was therefore involved in an extensive powder cocaine conspiracy. His participation in transactions involving large amounts of powder makes "his knowledge of a broader venture [] readily subject to an inference," *Dickey*, 736 F.2d at 585—in this case, a broader venture involving crack cocaine.

Ample evidence showed Mr. Webb and his associates converted some of the powder received from Mr. Dewberry into crack. Several witnesses testified that when the drivers returned to Junction City after picking up powder from Mr. Dewberry in Kansas City, drug organization members would cook some of this powder into crack.

Based in part on Mr. Dewberry's knowledge of the powder conspiracy, the close relationship between powder and crack (powder being a necessary ingredient of crack), and Mr. Webb's conversion of some of this powder into crack, a reasonable jury could infer that Mr. Dewberry could reasonably foresee that Mr. Webb converted powder into

280 grams or more of crack. But as in *Akins* and *Duffy*, we do not rely solely on the powder conspiracy.[10]

According to Mr. Lillibridge's testimony, Mr. Dewberry participated in at least one cook. Mr. Lillibridge testified that on one occasion, during "a delay in getting the stuff," he went to a residence that belonged to either Mr. Webb's or Mr. Dewberry's grandmother. ROA, Vol. III at 277. There, Mr. Lillibridge, Mr. Dewberry, and Mr. Webb waited to pick up some drugs. As they waited, Mr. Dewberry and Mr. Webb cooked a small quantity—"like an 8-ball or something"—of Mr. Dewberry's powder cocaine. *Id*. at 278. An 8-ball is about 3.5 grams of cocaine. Mr. Dewberry thus knew Mr. Webb was capable of converting the powder into crack. Moreover, it is significant that Mr. Dewberry cooked powder into crack not only in the presence of a driver, but also with the "top guy" in the drug conspiracy.

When asked why they cooked the 3.5 grams of powder into crack, Mr. Lillibridge responded, "Because that's what [Mr. Webb] sold. I mean, he didn't really sell much powder at all." *Id*. Mr. Lillibridge continued to explain that Mr. Webb was almost exclusively a crack cocaine dealer.[11] Mr. Dewberry's counsel conceded at oral argument

---

[10] *Dickey* involved only one conspiracy charge for two different drugs. This could explain why the court affirmed the conviction even in the absence of evidence showing the appellant's involvement with one of those two drugs. By contrast, because Mr. Dewberry faced a *separate* charge for a crack conspiracy, we believe some evidence of Mr. Dewberry's dealings with crack is needed. We discuss that evidence next.

[11] The Government conceded there is no evidence in the record that Mr. Lillibridge made this statement about Mr. Webb's exclusive dealings with crack in Mr. Dewberry's presence.

that it would be reasonable for a jury to infer, from Mr. Lillibridge's statements, that Mr. Dewberry knew Mr. Webb was selling at least *some* crack cocaine.

Mindful that all reasonable inferences are construed in favor of the Government in reviewing a sufficiency-of-the-evidence challenge, we hold the large quantities of powder Mr. Dewberry sold Mr. Webb, combined with Mr. Lillibridge's testimony that he witnessed Mr. Dewberry and Mr. Webb cooking crack together, would permit a reasonable jury to find that Mr. Dewberry could reasonably foresee that Mr. Webb converted powder into 280 grams or more of crack.

### C.   *Sentence on Count 2 (Powder)*

Because we affirm the conviction and sentence on Count 1, we need not necessarily reach the next issue on the imposition of the 168-month sentence on Count 2. The district court sentenced Mr. Dewberry concurrently.  So even if we were to reverse for a lower sentence on Count 2, Mr. Dewberry would still be subject to the 20-year mandatory minimum on Count 1.  Under the concurrent sentence doctrine, we could therefore summarily affirm the sentence on Count 2.  *See United States v. Montoya*, 676 F.2d 428, 431-32 (10th Cir. 1982).

That being said, this doctrine is discretionary rather than jurisdictional.  *See United States v. Harris*, 695 F.3d 1125, 1139 (10th Cir. 2012).  Moreover, because the parties discuss this issue at length without touching upon the concurrent sentence doctrine, and because the merits determination here flows from our disposition on the previous issue, we proceed to the merits and affirm.

1.  **Additional Procedural History**

Count 2 charged Mr. Dewberry with conspiring to distribute 5 kilograms or more of powder cocaine in violation of 21 U.S.C. § 846, with reference to penalty section 21 U.S.C. § 841(b)(1)(A)(ii), which sets a 10-year mandatory minimum sentence upon conviction for this quantity of powder. Mr. Dewberry's prior conviction for a felony drug offense raised the mandatory minimum sentence on Count 2 to 20 years. *See* 21 U.S.C. § 841(b)(1)(A). The jury found Mr. Dewberry guilty on Count 2 and made a special finding that he had conspired to distribute 5 kilograms or more of powder cocaine.

The PSR, however, determined that Mr. Dewberry was responsible for only 2,381.40 grams of powder, which was below the jury's determination of 5 kilograms or more. In his sentencing memorandum objecting to the PSR, Mr. Dewberry indicated that the PSR's powder cocaine calculation was lower than the jury's determination. He argued that, as such, he should be subject to 21 U.S.C. § 841(b)(1)(B), which imposes a 5-year mandatory minimum sentence for a conspiracy involving 500 grams or more and less than 5 kilograms of powder and a 10-year mandatory minimum sentence if the offender has a prior felony drug offense.[12] The Government agreed Mr. Dewberry should be subject to § 841(b)(1)(B), not § 841(b)(1)(A). The district court accepted the parties' position that the mandatory minimum should be 10, not 20, years.

---

[12] Puzzlingly, Mr. Dewberry suggested he should be held accountable for 2,679.02 grams of powder, an amount higher than the PSR's and district court's finding of 2,381.40 grams. He does not contest that either amount would subject him to a 10-year mandatory minimum sentence.

To calculate the Guidelines range for Count 2, the court considered the quantities of both the powder and the crack and then translated this amount to its marijuana equivalent. The court adopted the PSR's calculations, finding Mr. Dewberry was responsible for distributing 2.5 ounces of crack weekly for 21 weeks, for a total of 52.5 ounces, or 1,488.375 grams of crack. The PSR multiplied the 1,488.375 grams of crack by 3,571 grams of marijuana for a total marijuana equivalent of 5,314.98 kilograms. The court also accepted the PSR's calculation that Mr. Dewberry was responsible for 2,381.40 grams of powder. The PSR multiplied the 2,381.40 grams of powder by 200 grams of marijuana for a total marijuana equivalent of 476.28 kilograms. The total amount of marijuana equivalent was 5,791.26 kilograms, which corresponded to a base offense level of 34. Combined with a criminal history of II, this yielded a Guidelines range of 168-210 months on Count 2. The district court sentenced Mr. Dewberry to 168 months, to run concurrently with Count 1.

2. **Analysis**[13]

Mr. Dewberry argues the district court erred in holding him accountable for 1,488.375 grams of crack, and that he should have been held accountable for only 127.57 grams. He reaches this amount by multiplying 4.5 ounces and 28.3495 (because 1 ounce

---

[13] As explained above, the issue before this court on Count 1 concerned an element of the crime—whether a reasonable jury could have found beyond a reasonable doubt that Mr. Dewberry conspired to distribute 280 grams or more of crack. As such, Mr. Dewberry's challenge constituted a sufficiency-of-the-evidence issue. By contrast, Mr. Dewberry challenges the district court's drug quantity findings for the 168-month sentence on Count 2.

is equal to 28.3495 grams).[14] He argues that this amount, combined with his calculated powder quantity and converted into a marijuana equivalent of 1,246 kilograms, would result in an offense level of 32, rather than 34.

Mr. Dewberry makes a procedural reasonableness challenge to the district court's sentence, which we review for abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 46 (2007). "In determining whether the district court correctly calculated the recommended Guidelines range, we . . . review its factual findings, including its determination of the quantity of drugs for which the defendant is held accountable under the Guidelines for clear error." *United States v. Todd*, 515 F.3d 1128, 1135 (10th Cir. 2008). "Drug quantities employed by the district court to calculate the applicable Guidelines range may be said to be clearly erroneous only when the district court's finding was without factual support in the record or we are left with the definite and firm conviction that a mistake has been made." *Id.* (quotations omitted). "To constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." *United States v. Torres*, 53 F.3d 1129, 1144 (10th Cir. 1995).

"We view evidence underlying a district court's sentence, and inferences drawn therefrom, in the light most favorable to the district court's determination." *United States*

---

[14] Mr. Dewberry may have miscalculated if he based the 4.5 ounces on Mr. Lillibridge's testimony; he should have used 3.5 grams instead of 4.5 ounces because Mr. Lillibridge testified to 3.5 grams of crack, not 4.5 ounces. This possible mistake does not affect our analysis on this issue, however, because we affirm the district court's crack quantity finding.

*v. Walters*, 269 F.3d 1207, 1214 (10th Cir. 2001) (alterations and quotations omitted). But "[t]he government bears the burden of proving, by a preponderance of the evidence, the quantities of drugs attributable to each defendant." *Torres*, 53 F.3d at 1144.

The Guidelines authorize a sentencing court to consider "relevant conduct" in determining a defendant's base offense level. *See* U.S.S.G. § 1B1.3. "With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *Id*. at cmt. n.2 (2013). Mr. Dewberry does not argue that the district court erred in finding that crack cocaine dealings would be relevant conduct for sentencing on a powder cocaine conviction. Instead, his argument goes only to the quantity of crack, contending 1,488.375 grams of crack were not reasonably foreseeable to Mr. Dewberry.

The district court did not clearly err in attributing 1,488.375 grams of crack to Mr. Dewberry. Based on Mr. Lillibridge's testimony about Mr. Webb and Mr. Dewberry cooking cocaine together, the district court found the crack quantity was reasonably foreseeable to Mr. Dewberry. For the reasons articulated above under the second issue, we affirm the district court's finding. Because the district court made a plausible finding, it was not clearly erroneous. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) ( "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though

convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.").

Since the district court did not clearly err in calculating the amount of crack attributable to Mr. Dewberry, it did not err in calculating Mr. Dewberry's total offense level and the Guidelines range. Thus, it did not abuse its discretion in imposing the 168-month sentence, which was within the correctly-calculated Guidelines range.

D. *Motion to Sever*

Mr. Dewberry argues the district court abused its discretion in denying his initial motion to sever in April 2012, even though the court granted his second motion to sever in March 2013 and commenced his severed trial in July 2013. His claim of error consists mainly of two sentences: "Mr. Dewberry experienced an unnecessary delay in being brought to trial which the government sanctioned. From April 2012 until July 2013 Mr. Dewberry waited unnecessarily for trial." Aplt. Br. at 20. He also states: "The requirements of the Speedy Trial Act must be strictly construed. The Sixth Amendment argument set forth and argued by Mr. Dewberry in his first motion to sever were not waived nor abandoned." *Id.* (citation omitted).

This court reviews the denial of a motion to sever for abuse of discretion. *United States v. Clark*, 717 F.3d 790, 818 (10th Cir. 2013). "We will not disturb the trial court's decision absent an affirmative showing of abuse of discretion and a strong showing of prejudice." *United States v. Stiger*, 413 F.3d 1185, 1197 (10th Cir. 2005) (quotations and emphasis omitted).

We reject Mr. Dewberry's arguments and affirm on this issue. Mr. Dewberry's attempt to link the denial of his motion to "unnecessary delay" under the Speedy Trial Act or the Sixth Amendment is waived for inadequate briefing given the paltry nature of the above-excerpted lines as to any such arguments on appeal. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . .").

Regarding any remaining argument Mr. Dewberry may be making that the district court abused its discretion in denying his initial motion, some legal background may be helpful. Rule 8(b) of the Federal Rules of Criminal Procedure permits joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Rule 14(a), however, permits a court to sever a trial if joinder would prejudice a defendant. *See* Fed. R. Crim. P. 14(a). To determine whether the district court abused its discretion in denying a motion to sever, we evaluate the following, nonexhaustive list of factors (the "*McConnell* factors"):

> 1) the likelihood that the co-defendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege; 2) the significance of the testimony in relation to the defendant's theory of defense; 3) the exculpatory nature and effect of such testimony; 4) the likelihood that the co-defendant's testimony would be impeached; 5) the extent of prejudice caused by the absence of the testimony; 6) the effect of a severance on judicial administration and economy; [and] 7) the timeliness of the motion.

*United States v. McConnell*, 749 F.2d 1441, 1445 (10th Cir. 1984).

Although the district court denied his first motion to sever, it granted his second motion to sever under Rule 14(a). Mr. Dewberry received the severed trial he requested.

None of the *McConnell* factors are implicated.  Thus, he does not show how denial of the first motion prejudiced him.  Because he fails to demonstrate prejudice, let alone "a strong showing of prejudice," his claim fails.  *See Stiger*, 413 F.3d at 1197 (quotations and emphasis omitted).

### III.    **CONCLUSION**

For the foregoing reasons, we affirm Mr. Dewberry's convictions and sentence.